IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

RANDY KELLEY, *et al.*,　　　　　　)
　　　　　　　　　　　　　　　　)
　　　　Plaintiffs,　　　　　　　　)
　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　)　　Case No. 1:21-cv-56-RAH-SMD
　　　　　　　　　　　　　　　　)　　　　　　[WO]
JAMIE HARRISON, *et al.*,　　　　　)
　　　　　　　　　　　　　　　　)
　　　　Defendants.　　　　　　　)

## MEMORANDUM OPINION AND ORDER

On January 22, 2021, proposed Plaintiff-Intervenors Randy Kelley and Janet May (collectively, "Plaintiff-Intervenors") filed a Motion to Intervene (Doc. 3) with this Court for the purpose of filing a Complaint in Intervention (Doc. 3-1). The Motion has been fully briefed, and Defendants State Democratic Executive Committee of Alabama ("SDEC"); Christopher England, in his official capacity as Chair of the SDEC; the Democratic Party of the United States of America, also known as the Democratic National Committee ("DNC"); and Jaime Harrison, in his official capacity as Chairperson of the DNC (collectively, "Defendants"), have pronounced their vigorous opposition to intervention. (*See* Doc. 30.) After the benefit of oral argument, and upon consideration of the parties' respective briefs, the Motion is due to be granted.

The original action, which was filed in 1989, concerned the lack of adequate representation of Black Democrats on the governing body of the SDEC, which at that time was largely controlled by White Democrats in numbers disproportionate to the racial

makeup of the Alabama Democratic Party electorate. [1]  Ultimately, the case was settled with a consent decree in 1991 that required, among others, formation of a reform commission.  That commission recommended, and the local party adopted, bylaws and rules providing that a caucus of the minority members would be able to select SDEC members in equal proportion to the percentage of Black individuals comprising the Democratic Party electorate.

In their proposed Complaint in Intervention ("Intervenor Complaint") (*see* Doc. 3-1), the Plaintiff-Intervenors now claim, after having lost a previous state court action filed in the Circuit Court of Montgomery County, Alabama, the amendments adopted to the SDEC's bylaws at its 2019 conference violate the consent decree and seek enforcement of said consent decree.  As explained at oral argument, these claims center around the rights of the party's minority caucus members to choose members on the SDEC and whether the amended bylaws dilute the voting power of the minority caucus. Additionally, Plaintiff-Intervenors bring claims under Section 2 of the Voting Rights Act and the Fourteenth and Fifteenth Amendments. (Doc. 3 at 3.)

Prompted by the pending Motion, the question in dispute at this juncture is this: May Plaintiff-Intervenors pursue these claims as intervenors in the 1989 action that culminated in the 1991 consent decree or should they be required to pursue their claims in a separate, stand-alone action?  As the Defendants argue, "[Plaintiff-Intervenors] can file

---

[1] A new case number has been assigned to this case for the purposes of allowing the parties to utilize the Court's electronic CM/ECF filing system, which was not available at the time the original action *Hawthorne v. Blount*, CA 89-T-381-S (M.D. Ala.) was litigated.

a separate lawsuit which alleges the same claims as in the Complaint in Intervention."
(Doc. 30 at 20.)  They cite the age of the original action and the passage of time, the
untimeliness of the Plaintiff-Intervenors' Motion, and the general lack of merit to the
Intervenor Complaint as support for their position that the more appropriate vehicle for all
three claims, including enforcement of the consent decree, is a newly filed, separate
lawsuit, and not the original action filed in 1989 (this action).

The Court first turns to Rule 24 of the Federal Rules of Civil Procedure, which sets
forth two types of intervention: (i) intervention as of right, and (ii) permissive intervention.
With respect to the former, a party seeking intervention must show that:

> (1) his application to intervene is timely; (2) he has an interest relating to the
> property or transaction which is the subject of the action; (3) he is so situated
> that disposition of the action, as a practical matter, may impede or impair his
> ability to protect that interest; and (4) his interest is represented inadequately
> by the existing parties to the suit.

*Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989). Permissive intervention, by
contrast, "is appropriate where a party's claim or defense and the main action have a
question of law or fact in common and the intervention will not unduly prejudice or delay
the adjudication of the rights of the original parties." *Georgia v. U.S. Army Corps of
Engineers*, 302 F.3d 1242, 1250 (11th Cir. 2002).

Here, the Plaintiff-Intervenors seek intervention under both.  But from the Court's
perspective, it need not tangle with an analysis of intervention as of right because Plaintiff-
Intervenors have sufficiently shown that permissive intervention is appropriate.

Where Defendants challenge the untimeliness of the Motion, it is true that Plaintiff-
Intervenors' delay in seeking intervention—the SDEC's amended bylaws were enacted in

3

October 2019—cuts against them. But the paramount consideration for the timeliness requirement is whether the delay has prejudiced the Defendants, and here, there is no discernible evidence of any prejudice to Defendants at all—at least, none that amounts to anything more than speculation or conjecture. *See Comm'r, Alabama Dep't of Corr. v. Advance Loc. Media, LLC*, 918 F.3d 1161, 1171 (11th Cir. 2019) ("The most important consideration in determining timeliness is whether any existing party to the litigation will be harmed or prejudiced by the proposed intervenor's delay in moving to intervene. In fact, this may well be the only significant consideration when the proposed intervenor seeks intervention of right."). Plaintiff-Intervenors waited just over a year from the time their claims ripened to raise this Motion, and for their part, Defendants point to no concrete prejudice they will face because of Plaintiff-Intervenors' short delay.  Moreover, it is hard for the Court to give Defendants' prejudice argument much weight when, in the same breath, they also argue that Plaintiff-Intervenors should pursue their claims in a separate lawsuit, which would involve the same concerns of prejudice; that is, litigating purported violations of a 30-year-old consent decree. In other words, to the extent Defendants would be prejudiced if intervention were granted, Defendants would be equally prejudiced in a newly filed lawsuit concerning identical issues.  Therefore, the Court cannot say that Defendants would face less prejudice by requiring Plaintiff-Intervenors to litigate the same claims in a separate lawsuit rather than as intervenors in this one.

Closing on this issue, Plaintiff-Intervenors do not attempt to intervene during the eleventh hour of settlement negotiations or immediately before a court's final action in reviewing and approving a proposed consent decree, which is often the source of a

persuasive untimeliness prejudice argument. *See, e.g.*, *Hollywood Cmty. Synagogue, Inc. v. City of Hollywood, FL*, 254 F. App'x 769, 771 (11th Cir. 2007) (affirming the denial of a motion to intervene as of right as untimely when filed one day prior to district court's approval of a consent decree that resulted from twenty-two months of settlement negotiations); *Conway v. Blue Cross Blue Shield of Alabama*, Case No. 2:12-CV-02532-RDP, 2019 WL 1620360, at *5 (N.D. Ala. Apr. 16, 2019) (intervention untimely where proposed intervenor had known of case for five years and the parties had already completed common discovery); *Consumer Fin. Prot. Bureau v. Ocwen Fin. Corp.*, Case No. 17-80495-CIV, 2018 WL 4922457, at *3 (S.D. Fla. Sept. 27, 2018) (denying permissive intervention where "[p]ermitting intervention would force the parties in this case to litigate factual questions not presently at issue, and the scope of discovery, which has already been underway for over a year, would necessarily expand to include the claims of the proposed Intervenors."). Instead, they seek enforcement of a consent decree already in effect and have chosen the appropriate legal channels for doing so.

Second, the Court notes that Plaintiff-Intervenors' claims (particularly Count I) and Defendants' defenses (particularly their insistent references to the consent decree's clear language and the goals of the party that culminated in the consent decree) underscore the point that the Intervenor Complaint and this original action have questions of law or fact in common. That is, Plaintiff-Intervenors' asserted interest in preserving the voting power of Black Democrats and their influence within the SDEC was *the* subject of the original action and is again the subject of the allegations set forth in the Intervenor Complaint. Indeed, Defendants themselves seem to recognize this, as they concede there is a "common

5

interest" between Plaintiff-Intervenors' claims and those asserted in the original action (even if, they argue, that interest does not support Plaintiff-Intervenors' ultimate goals). (Doc. 30 at 21–22.)

Where permissive intervention is requested, the decision to grant it is "wholly discretionary with the court." *Worlds v. Dep't of Health & Rehab. Servs., State of Fla.*, 929 F.2d 591, 595 (11th Cir. 1991). Guided by the Middle District of Alabama's prior recognition that "a party seeking to enforce a consent decree should file a motion in the case from which the decree emanated," *Carney v. City of Dothan*, 158 F. Supp. 3d 1263, 1284 (M.D. Ala. 2016), there is little doubt that the original action is the proper place to adjudicate the relief sought here; that is, interpretation and enforcement of the 1991 consent decree. *See Lyon v. Ashurst*, Case No. CIV A 208-CV-394-WHA, 2008 WL 3821832, at *8 (M.D. Ala. Aug. 13, 2008); *Harrelson v. Elmore Cty., Ala.*, 859 F. Supp. 1465, 1470 (M.D. Ala. 1994). Because questions as to what the consent decree requires of Defendants will be central to Plaintiff-Intervenors' claims, the Court additionally notes this litigation will proceed most efficiently within the parameters of the original action from which the consent decree resulted.

Further, from merely a common sense and judicial efficiency standpoint, it may well be that the passage of time compels a result that requires the parties through a settlement, or perhaps this Court through a finding, to modify the consent decree to account for intervening changes in the law or the modern-day goals, realities, and needs of the SDEC, its membership, and Democrats in Alabama. *See* Fed.R.Civ.P. 60(b)(5) (allowing modification of a judgment when "applying it prospectively is no longer equitable"); *cf.*

*Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 391 (1992) (setting forth the governing standard that allows courts to modify a consent decree). In preparing for the possibility that the parties do request modification of the consent decree, it is fitting for this Court to proceed within the framework of the original action, as this path gives this Court the latitude to make any such modifications without having to delve into a legal analysis (e.g., res judicata, estoppel, jurisdiction, standing, etc.) that would be necessary in a separate action. *See In re Birmingham Reverse Discrimination Emp. Litig.*, 833 F.2d 1492, 1498 (11th Cir. 1987) ("With respect to the preclusive effect of a consent decree on nonparties, . . . the same principles of res judicata and collateral estoppel that govern ordinary judgments come into play.").

Accordingly, the Motion to Intervene (Doc. 3) is

GRANTED.

The Clerk is DIRECTED to add Randy Kelley and Janet May as plaintiffs in this action. Plaintiffs Kelley and May shall file their Complaint in Intervention on or by **August 13, 2021**, and Defendants shall serve a responsive pleading within twenty-one (21) days of the filing of the Complaint.

DONE, on this the 28th day of July, 2021.

      /s/ R. Austin Huffaker, Jr.
R. AUSTIN HUFFAKER, JR.
UNITED STATES DISTRICT JUDGE