IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **Thomas Hawthorne** and **Emory Newman**, individually and on behalf of all other persons similarly situated,<br><br>      Plaintiffs,<br><br>**Andre Keith,**<br><br>      Plaintiff-Intervenor,<br><br>**Randy Kelley and Janet May,**<br><br>Plaintiff-Intervenors<br><br> vs.<br><br>**Jaime Harrison**, in his official capacity as National Chairperson of the Democratic National Committee, et al.,<br><br>      Defendants. | 1:21-cv-00056-RAH-SMD<br><br>Original case number: 89-T-381-S<br><br><br><br>**Complaint in Intervention** |

## Nature of the Case

1.     This case is about the bylaws of the Alabama Democratic Party. In 1989, African-American voters brought this suit challenging those bylaws under Sections 2 and 5 of the Voting Rights Act, 52 U.S.C. §§ 10301 and 10304, and the Fourteenth and Fifteenth Amendments. The plaintiffs sought various forms of relief aimed at requiring the Party to give Black voters a greater opportunity for representation on party governing bodies at the national, state, and county levels based on Black voters' presence in the Democratic electorate. The parties settled the case in 1991 with a consent decree that, among other things, required the Party to adopt reforms designed to provide full and fair representation for Black Democrats. In 2019, however, the Party adopted a new set of bylaws that unraveled those reforms and undermined Black voting strength in affairs of the Party.

2.     This complaint in intervention seeks to enforce the 1991 consent decree in this case or, in the alternative, to challenge the 2019 bylaws under Section 2 of the Voting Rights Act. The plaintiff-intervenors seek declaratory and injunctive relief restoring Black voters' opportunity to elect Party officials of their choice.

## Jurisdiction and Venue

3.     This Court has original jurisdiction over this case under 28 U.S.C. §§ 1331, 1343(a)(3)-(4), and 2201(a) and 52 U.S.C. § 10308(f).

4.     Venue is proper in this Court under 28 U.S.C. §§ 90(a)(2) and 1391(b).

## Parties

5.     Plaintiff-Intervenors Randy Kelley and Janet May are African-American residents and registered voters in Alabama. They are former members of the State Democratic Executive Committee of Alabama. They want to participate in the governance of the Alabama Democratic Party on an equal basis with other members of the electorate.

6.     Defendant Jaime Harrison is the National Chairperson of the Democratic National Committee. He is sued in his official capacity only.

7.     Defendant Democratic National Committee is the governing body of the Democratic Party of the United States.

8.     Defendant Democratic Party of the United States of America is a national political party based in Washington, D.C.

9.     Defendant Christopher J. England is the Chair of the State Democratic Executive Committee of Alabama as recognized by the Democratic National Committee and the Alabama Secretary of State. He is sued in his official capacity only.

10.    Defendant State Democratic Executive Committee of Alabama is the governing body of the Alabama Democratic Party.

## Background

11.    On July 3, 1991, this Court entered a consent decree resolving the plaintiffs' outstanding claims regarding the methods of selecting members of Democratic committees, boards, and subcommittees at the national, state, and county levels.

12.    A true and accurate copy of that decree is attached hereto as Exhibit 1.

13.    Among other things, the decree required the Chair of the State Democratic Executive Committee to appoint a reform commission to propose revisions to the Party's method of selecting members of party governing bodies.

14.     The stated goals of the proposed revisions, according to the decree, included providing "full and fair representation for all Democrats in Alabama, including in particular black Democrats."

15.     The decree also required the State Democratic Executive Committee to consider and adopt reforms proposed by the commission no later than the 1994 Democratic primary election.

16.     The terms of the decree were "permanent and binding on the parties" and expressly provided that resolution of the case "shall be without prejudice to the rights of plaintiffs and/or other members of the plaintiff class to institute a civil action to seek enforcement of the terms of this decree or to assert that future practices of the defendants . . . violate the Constitution and laws of the United States or the State of Alabama."

17.     Following the entry of the decree, the State Democratic Executive Committee adopted a set of reforms known as the "Figures Amendment" to the Party's bylaws.

18.     A true and accurate copy of the Figures Amendment is attached hereto as Exhibit 2.

19.     Under the Figures Amendment, each of Alabama's 105 state House districts elected two members of the State Democratic Executive Committee. The Figures Amendment also provided for the addition of a number of at-large members of the State Democratic Executive Committee if necessary to ensure Black representation.

20.     To determine the number of at-large seats to be added, the Figures Amendment first required the Chair of the State Democratic Executive Committee, in consultation with the Committee's Vice-Chair for Minority Affairs, to calculate the percentage of minority voters in the most recent Democratic gubernatorial primary election and the percentage of minorities in the state's population according to the most recent federal census. The Figures Amendment then required the Chair to determine the number of at-large seats needed to bring the percentage of minorities on the State Democratic Executive Committee up to the *higher* of those two percentages. (A later amendment changed the benchmark election from the gubernatorial primary to the presidential primary.)

21.     As a practical matter, the number of at-large seats was calculated as follows. If, for example, minority voters were 70 percent of

6

the Democratic electorate in the most recent presidential election, the target number of minority members of the State Democratic Executive Committee would be 70 percent of the 210 members elected from state House districts, which equals 147. If there were only 112 minority members elected, the number of at-large seats would be 147 minus 112, which equals 35 at-large members.

22.     The Figures Amendment provided that the at-large members would be selected by a caucus of the minority members of the State Democratic Executive Committee elected from Alabama's 105 state House districts.

23.     The Figures Amendment remained in place with only minor amendments, until 2019.

24.     On August 11, 2018, the State Democratic Executive Committee held an organizational meeting at which its members elected a slate of officers that had been endorsed by the Alabama Democratic Conference, an African-American political association affiliated with the Democratic Party. Among those elected were Nancy Worley, who is white and was elected Chair of the State Democratic Executive Committee, and Randy Kelley, who is Black and was elected Vice-Chair

7

of the State Democratic Executive Committee. Voting in the election was racially polarized, with a supermajority of Black members supporting the slate of officers endorsed by the Alabama Democratic Conference and a supermajority of white members supporting a competing slate of officers.

25.     The Chair of the Democratic National Committee, Tom Perez, had opposed the election of Worley and Kelley and had instead supported the competing slate of officers. Senator Doug Jones, a non-voting member of the State Democratic Executive Committee, had also opposed Worley and Kelley and had supported the competing slate of officers.

26.     Members of the State Democratic Executive Committee who had supported the competing slate of officers subsequently lodged a challenge to the election of Worley and Kelley with the Credentials Committee of the Democratic National Committee, whose members were appointed by Perez.

27.     In February 2019, the Credentials Committee ordered the State Democratic Executive Committee to hold a new election for Chair

and Vice Chair and to adopt a new set of bylaws that comply with the charter and bylaws of the Democratic National Committee.

28.     The Credentials Committee did not order a new election for any of the more than ten other officers elected at the August 11, 2018, organizational meeting.

29.     Worley later called a special meeting of the State Democratic Executive Committee for October 12, 2019, for the purpose of adopting a new set of bylaws.

30.     After that meeting was scheduled, but before that meeting was held, however, opponents of Worley and Kelley called a special meeting of the State Democratic Executive Committee for October 5, 2019, for the purpose of adopting a *different* set of new bylaws. Perez and Jones supported efforts to hold the October 5 meeting.

31.     At the meeting held on October 5, 2019, the State Democratic Executive Committee adopted a set of amended and restated bylaws that, among other things, added six additional diversity caucuses and made significant changes to the method of electing the at-large members of the State Democratic Executive Committee. Members of the committee also noticed a second meeting for November 2, 2019, for the

9

purpose of electing a new Chair and Vice-Chair and filling other vacancies created by the new bylaws.

32.     On October 12, 2019, the State Democratic Executive Committee held a meeting and adopted a different set of bylaws that purported to repeal all previous versions, including the bylaws adopted on October 5. Members of the committee also noticed a second meeting for November 16, 2019, for the purpose of electing a new Chair and Vice-Chair and filling other vacancies created by the new bylaws.

33.     On November 2, 2019, the State Democratic Executive Committee held a meeting under the October 5 bylaws. After filling the vacancies created by the new bylaws, members voted to remove Worley and Kelley as Chair and Vice-Chair. Members then elected defendant Christopher J. England as Chair and Patricia Todd as Vice-Chair.

34.     On November 16, 2019, the State Democratic Executive Committee held a meeting under the October 12 bylaws and re-elected Worley and Kelley as Chair and Vice-Chair.

35.     Perez and the Democratic National Committee refused to recognize the October 12 bylaws or the actions taken at the November 16 meeting of the State Democratic Executive Committee.

36.     In December 2019, the Alabama Secretary of State recognized England as the official chair of the Alabama Democratic Party, and the Party continues to operate under the October 5 bylaws.

37.     The October 5 bylaws retain the Party's existing minority caucus, which consists of the State Democratic Executive Committee's African-American members, and added diversity caucuses for young members, Hispanic members, LGBTQ+ members, Asian/Pacific Islander members, Native American members, and disabled members.

38.     The October 5 bylaws also create diversity goals for each such caucus to be calculated in purportedly the same manner previously applied to the minority caucus. That is, the new diversity goal for each caucus is determined by the higher of two percentages: (1) the percentage of the targeted constituency in the Democratic electorate in the most recent presidential primary; and (2) the percentage of the targeted constituency in the State's population according to the most recent data from the Census Bureau. The higher of those percentages is then applied to the 210 members elected from state House districts to determine the diversity goal for each caucus, and at-large members are added to the State Democratic Executive Committee if necessary to

11

bring the number of committee members within each caucus up to the applicable diversity goal.

39.     The October 5 bylaws also provide that at-large members are no longer selected by the minority caucus. Instead, they are elected by the 210 elected members of the State Democratic Executive Committee from among candidates nominated by the applicable diversity caucus.

40.     The October 5 bylaws contain an Appendix A which estimates the immediate impact of the changes in the number of at-large seats.

41.     A true and accurate copy of Appendix A to the October 5 bylaws is attached as Exhibit 3.

42.     As shown on Appendix A, the estimated effect of the changes was to add 79 at-large seats to the State Democratic Executive Committee: three to meet the diversity goal for Asian/Pacific Islander members; zero to meet the diversity goal for African-American members; seven to meet the diversity goal for Hispanic members; 15 to meet the diversity goal for LGBTQ+ members; three to meet the diversity goal for Native American members; and 51 to meet the diversity goal for young

members. All 79 of the additional at-large members were to be filled by the elected members of the State Democratic Executive Committee.

43.    The effect of the October 5 bylaws is thus to dramatically reduce the influence of the State Democratic Executive Committee's existing minority caucus and to increase the influence of the Committee's members elected from Alabama's state House districts.

44.    Just as when this case was first filed, African Americans do not have an equal opportunity to elect Committee members from Alabama's state House districts, which are predominantly white.

45.    The October 5 bylaws thus increase the impact of white voters at the expense of Black voters and dilute Black Democrats' voting strength on the Party's governing bodies.

### Relief

46.    A real and actual controversy exists between the parties.

47.    The plaintiffs have no adequate remedy at law other than this action for declaratory and equitable relief.

48.    The plaintiffs are suffering irreparable harm as a result of the violations complained of herein, and that harm will continue unless declared unlawful and enjoined by this Court.

## Claim One

49.    The October 5 bylaws of the State Democratic Executive Committee of Alabama violate the consent decree in this case by reducing the influence of the Committee's existing minority caucus and by shifting control over the selection of at-large members of the minority caucus to the Committee's elected members.

## Claim Two

50.    The October 5 bylaws of the State Democratic Executive Committee of Alabama dilute Black voting strength in violation of Section 2 of the Voting Rights Act of 1965, 52 U.S.C. § 10301.

## Claim Three

51.    The October 5 bylaws of the State Democratic Executive Committee of Alabama were adopted with the discriminatory purpose of diluting Black voting strength in violation of Section 2 of the Voting Rights Act of 1965, 52 U.S.C. § 10301, and the Fourteenth and Fifteenth Amendments to the United States Constitution.

WHEREFORE, the plaintiff-intervenors respectfully pray that this Court:

(1) assume original jurisdiction over this case;

(2) enter a declaratory judgment that the October 5 bylaws of the State Democratic Executive Committee of Alabama violate the consent decree in this case;

(3) enter a declaratory judgment that the October 5 bylaws of the State Democratic Executive Committee of Alabama violate Section 2 of the Voting Rights Act and the Fourteenth and Fifteenth Amendments to the United States Constitution;

(4) enjoin the defendants from failing to amend the relevant provisions of the bylaws in a manner that complies with the Consent Decree, the United States Constitution, and Section 2;

(5) order the defendants to conduct an immediate organizational meeting to implement the amended bylaws, including the nomination and election of officers and at-large members of the State Democratic Executive Committee;

(6) award the plaintiff-intervenors the costs of this action together with their reasonable attorneys' fees and expenses under 52 U.S.C. § 10310(e) and 42 U.S.C. § 1988; and

(6) retain jurisdiction of this action and grant the plaintiff-intervenors any further relief which may in the discretion of the Court be warranted and proper.

Respectfully submitted this 13th day of August, 2021.


Fred F. Bell
Alabama Bar No. 0299B50F
1015 South McDonough Street
Montgomery, Alabama 36104
Telephone: (334) 303-0719
Email: ffbell@netzero.com

Mark Sabel (SAB004)
Sabel Law Firm, L.L.C.
P.O. Box 231348
Montgomery, AL 36123
Phone: (334) 546-2161
Email: mksabel@mindspring.com

**/s/ Bryan L. Sells**
Bryan L. Sells*
Georgia Bar No. 635562
The Law Office of Bryan L. Sells, LLC
PO Box 5493
Atlanta, Georgia 31107-0493
Telephone: (404) 480-4212
Email: bryan@bryansellslaw.com

* Admitted *Pro Hac Vice*

*Attorneys for the Plaintiff-Intervenors*

17

## CERTIFICATE OF SERVICE

I hereby certify that on August 13, 2021, I served the foregoing document by U.S. Mail, first-class postage prepaid, on the following parties:

Thomas Hawthorne
601 Cotton Ridge Lane
Dothan, AL 36301

Emory Newman
212 W. Washington Street
Abbeville, AL 36310

Andre Keith
<address currently unknown>

I further certify that I electronically filed this document with the Clerk of the Court using the CM/ECF system, which will give notice of the filing to the following attorneys of record:

Barry Alan Ragsdale
Dominick Feld Hyde, PC
1130 22nd Street South, Suite 4000
Birmingham, AL 35205
bragsdale@dfhlaw.com

*Counsel for Christopher J. England, as the Chair of the State Democratic Executive Committee of Alabama, and State Democratic Executive Committee of Alabama*

Anil A. Mujumdar
Dagney Johnson Law Group
2170 Highland Avenue, Suite 250
Birmingham, Alabama 35206
anil@dagneylaw.com


Elisabeth C. Frost
Marc. E. Elias
Perkins Coie, LLP
700 14th Street NW
Washington, D.C. 20005
efrost@perkinscoie.com
melias@perkinscoie.com


Sarah R. Gonski
Perkins Coie, LLP
2901 N. Central Avenue
Phoenix, Arizona 85012
sgonski@perkinscoie.com


*Counsel for the Democratic National Committee and Jaime Harrison, as Chair of the Democratic National Committee*

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

THOMAS HAWTHORNE and EMORY NEWMAN, in-
dividually and on behalf of all other
persons similarly situated,

     Plaintiffs,

ANDRE KEITH,

     Plaintiff-Intervenor,

vs.

WILLIAM B. BLOUNT, in his official ca-
pacity as Chairman of the State Demo-
cratic Executive Committee of Alabama;
et al.,

     Defendants.

CA 89-T-381-S

## Consent Decree

This action was brought under amended Sections 2 and 5 of
the Voting Rights Act, 42 U.S.C. §§ 1973 and 1973c, and the
Fourteenth and Fifteenth Amendments.  Plaintiffs sought various
forms of relief aimed at requiring the defendants to afford black
Alabama Democrats an equal opportunity for representation on
party governing bodies at the national, state and county levels
based on black voters' presence in the Democratic electorate.
The defendants have contended that these laws and constitutional
provisions do not cover their actions and, if they are covered,
that their actions do not violate these provisions.  Trial on the
Section 2 claims was held in January 1990 before a single judge,
and another hearing was conducted before a three-judge court on
the Section 5 claims in August 1990.

There is a disagreement between the parties as to whether there is any liability on the part of the defendants in this action, but the parties have agreed to settle and compromise all aspects of this action, including claims for attorneys' fees, to avoid the risks and further expense of litigation. Nothing in this agreement should be taken as an admission of culpability on the part of the defendants, nor as an admission by the plaintiffs that their action lacked merit.

Following a hearing conducted pursuant to Rule 23, Fed.R.Civ.P., the Court finds that the proposed settlement is fair, just, and equitable and should be given final approval by the Court. Upon consideration of these facts and findings, it is ORDERED, ADJUDGED, and DECREED as follows:

1. Within thirty (30) days of the date of final approval of this decree, the Chair of the State Democratic Executive Committee of Alabama shall appoint a Democratic Reform Commission, on which black Democrats shall be fairly represented. Service on the Reform Commission need not be limited to SDEC members, but may include other loyal Democrats in the state. The Commission shall be composed of not less than seven (7) and not more than fifteen (15) members. Each congressional district shall have some representation on the Commission.

2. The Reform Commission shall undertake such work as the Chair of the SDEC may designate, which shall include, though need not be limited to, revising the methods utilized in Alabama for

2

selecting members of the Democratic National Committee, the State Democratic Executive Committee (including its boards and subcommittees), and all county Democratic executive committees.  The Commission's goal shall be to propose reforms, as necessary, to:

(1)  Provide full and fair representation for all Democrats in Alabama, including in particular black Democrats.

(2)  Increase participation in party affairs of Democrats at the grass roots level, with particular emphasis on revitalization of county executive committees.

(3)  Reform and revitalize activities of Democratic committees at all levels better to recruit and support Democratic candidates for office.

3.    The Reform Commission shall report to the State Democratic Executive Committee before January 1, 1993.

4.    The State Democratic Executive Committee shall consider the reforms proposed by the Reform Commission, and it shall adopt those reforms deemed desirable, or, at its discretion, other reforms conforming to the goals set out in paragraph 2 above, in time for the reforms to be implemented not later than the 1994 Democratic primary election.

5.    The SDEC agrees that for the terms beginning in or after 1992, at least two of the five members serving on the National Democratic Committee from Alabama shall be black.

6.    The parties have resolved all issues concerning costs and attorneys' fees.

3

7.    When the Chair of the SDEC notifies this Court that said Democratic Reform Commission has been appointed, this action shall be dismissed; Provided, however, that the terms of this decree shall be permanent and binding on the parties, and dismissal shall be without prejudice to the rights of plaintiffs and/or other members of the plaintiff class to institute a civil action to seek enforcement of the terms of this decree or to assert claims that future practices of the defendants, and each of them, violate the Constitution and laws of the United States or the State of Alabama.

8.    Plaintiffs' outstanding claims regarding the methods of selecting members of Democratic committees, boards and subcommittees at the national, state and county levels shall be considered resolved by implementation of the terms of this decree.

DONE this  3rd  day of  July  , 1991.

UNITED STATES DISTRICT JUDGE

7/3/91

(1)   FIGURES AMENDMENT

Article III, Section 1; Article IV, Section 1, first paragraph, and Section 4 are hereby amended to read as follows (omitted matter is stricken through and new matter is underlined):

ARTICLE III

PARTY ORGANIZATION

Section 1.   State Committee.   (a)   The State Committee shall consist of two hundred ten (210) members popularly elected from the districts hereinafter provided, together with the following additional members:

National Committee persons;

~~The State President of the Young Democrats of Alabama;~~

~~A State Committeeman and a State Committeewoman duly elected by the State Convention of Young Democrats of Alabama;~~

The Chairman, four Vice-Chairmen, Secretary, and Treasurer of the State Committee if any one or more of such officers are not otherwise members of the State Committee;

~~The President of the Alabama Labor Council;~~

~~Officials of two of the five international unions with the largest memberships in Alabama, said two to be chosen by the ranking officials in Alabama of all five of said international unions;~~

Any other member(s) of the National Committee who is a citizen of the State of Alabama;

The Democratic Governor and all Democrats from Alabama in the United States Senate and House of Representatives; shall be ex-officio, non-voting members of said committee;

~~The President of the League of Democratic County Committees and three other County Chairmen elected by the League;~~

~~Twenty-three minority seats to be elected by the Alabama Democratic Conference in such a manner as to insure that no Congressional District will be without black representation on the State Committee;~~

~~Each past Chair of the Alabama Democratic Party (for a period of eight years immediately following his or her term of office);~~

It is the policy of the SDEC that minority members should be represented on the SDEC in proportion to their presence in the Democratic Electorate of Alabama or in proportion to their presence in the population of Alabama, whichever is greater. The term "Democratic Electorate" of Alabama is defined as being composed of those persons who vote in the Democratic gubernatorial Primary of the Democratic Party of Alabama in 1990 and in each succeeding gubernatorial primary every four years after 1990.

Prior to the organizational meeting to be held in 1990, and each four years thereafter, the Chairman shall, utilizing whatever expert advice and assistance is necessary, and with the advice and consultation of the Vice-Chairman for Minority Affairs, determine the percentage of minority voters in the Democratic Electorate and compare that percentage to the

percentage of minority members found in the population of
Alabama, according to the most recent federal decennial census.
The higher percentage shall be selected as the percentage of
minority members of the State Committee.  If the higher of the
two percentages is not met by the number of minority members
elected, then the Chairman shall determine the number of minority
members to be added to the State Committee to bring the number of
minority members on the State Committee up to the level of the
higher of the two percentages.  The Chairman shall make available
to any member of the State Committee the methodology and expert
advice utilized by him.  If any member of the State Committee
disagrees with the number established by the Chairman, then he or
she may request a review of the decision by the Executive Board.
This number of persons, if any, to be added onto the State
Committee shall be selected by a caucus of the elected minority
members of the State Committee prior to the 1990 organizational
meeting, and every four years thereafter, provided, however, that
each person so selected must have qualified and run for election
to the State Committee.  The additional members shall be selected
in such a manner as to insure that no Congressional District will
be without minority representation on the State Committee.  In
the event there is a Congressional District where no minority
person qualified to run for the State Committee, then the caucus
shall select a minority member from the Congressional District
even if that person did not qualify to run for the State
Committee.  An equal division between men and women shall be
maintained among those persons selected.  After these additional

3

members are selected, the minority caucus of the State Committee
shall be composed of the elected and selected minority members of
the State Committee.

(b)   The term of all popularly elected members of the
State Committee shall be four years.  Said term shall begin upon
the certification of each member as provided by law and shall
continue until their successors are elected and qualified.  The
term of office of the members of the National Committee shall be
as provided by Article IV hereof.  The terms of office of the
President, State Committeeman and State Committeewoman of the
Young Democrats of Alabama shall be for two years and extend from
the time of their election until their successors are duly
elected and qualified.

(c)   Each of the popularly elected members of the State
Committee must be a qualified elector and have and retain
citizenship, residence and right to vote in the geographical unit
from which he or she is chosen and serves.  Should he or she one
lose such citizenship or residence or the right to vote by
permanently moving from said geographical unit or otherwise, the
same shall constitute a vacancy in such membership.  Vacancy in
membership for any reason shall be filled for the unexpired term
by the State Committee at the next meeting following the
occurrence of such vacancy, except that a vacancy in any position
held by a minority member shall be filled by the minority caucus
prior to the next meeting of the State Committee.

(d)   The popularly elected members of the State Committee
shall be elected from the one hundred five districts used for the

4

election of the State House of Representatives.  One man and one woman shall be elected from said districts; except, however, that if said State House districts are hereafter changed by court decree or legislative act, such change shall not be effective with respect to such State Committee districts until the expiration of the term during which such change is made.  Each State Committee district shall bear the same number as the corresponding State House district.  With regard to these 210 members, Aall male candidates shall be listed on the ballot together.  All female candidates shall be listed on the ballot together.  The voters shall have one vote for male candidates and one vote for female candidates.  The male candidate and female candidate receiving the largest number of votes shall be elected.

(e)  Equal division of positions between men and women will apply in all cases where possible.

ARTICLE IV

STATE COMMITTEE

Section 1.  Officers and Terms.  The officers of the State Committee are the Chairman, the First Vice-Chairman, the Vice-Chairman for Minority Affairs,  the Vice-Chairman-for-County Affairs,-the-Vice-Chairman-for-Minority-Affairs,-who-shall-be-the President-of-the-Alabama-Democratic-Conference, the Vice-Chairman for Youth Affairs, the Vice-Chairman for County Organizations, and the Secretary shall be elected at the organizational meeting of the State Committee.  At the organizational meeting in 1990, the minority caucus shall meet two hours before the organizational meeting of the State Committee at the same

5

location of the organizational meeting.  The Chairman of the
State Committee shall convene the meeting and as the first order
of business the caucus shall elect a temporary chairman of the
meeting.  The Chairman of the State Committee, upon the election
of the temporary chairman of the minority caucus, shall leave the
caucus meeting.  The next order of business of the caucus shall
be the selection of any additional minority members of the State
Committee as provided for within these rules.  The caucus shall
then elect the Vice-Chairman for Minority Affairs of the State
Committee.  The caucus shall also select its nominees for the
Executive Board and shall conduct whatever additional business is
deemed appropriate.  After the caucus meeting is concluded, the
Vice-Chairman for Minority Affairs shall certify to the Chairman
of the State Committee those persons selected as additional
minority members of the State Committee so that those persons may
be seated as members of the State Committee.  After members of
the Executive Board have been elected at the organizational
meeting in 1990, the minority caucus shall reconvene for the
purpose of selecting additional minority members of the
Executive Board.  The names of these persons selected to serve on
the Executive Board shall be certified to the Chairman by the
Vice-Chairman for Minority Affairs.  Each Vice-Chairman shall be
elected for a term of four (4) years and shall serve until their
respective successors are elected, except however, that in all
events, they shall serve at the pleasure of the State Committee
or of the minority caucus, as applicable.  The Treasurer shall be
appointed by the Chairman with the concurrence of the Executive

Board.  The Chairman and First Vice-Chairman shall be of
different sexes.

Section 4.  Executive Board.  There shall be an Executive
Board composed of:  (a) one male and one female State Committee
member from each Congressional district who shall be elected to
the said Executive Board by the members of the State Democratic
Executive Committee from that district provided, however, that no
minority member shall be elected unless he or she has been
nominated by the minority caucus, (b) the State Chairman, (C) the
National Committee members, (d) the four Vice-Chairmen, (e) the
Secretary, and (f) the Treasurer.~-and-{g}-three-members-elected
by-and-from-the-Alabama-Democratic-Conference-members-of-the
State-Committee~  In terms of minority representation, the
Executive Board shall reflect the same percentage of minority
representation as on the State Committee after the procedures
outlined in Article III Section I have been effected.  Any
additional members of the Executive Board needed to bring the
minority percentage of the Executive Board up to the required
level shall be selected by the caucus of minority members at the
1990 organizational meeting and each four years thereafter.  Any
vacancies in minority members of the Executive Board which occur
during any quadrenium shall be filled by the minority caucus.
The Executive Board shall meet on the last Friday of each
calendar quarter and at other times as necessary at the call of
the Chairman, or on the written request of any eight members
thereof.  Eight of its members shall constitute a quorum.  In the
event that no Executive Board member shall have been elected by

7

the District Committee of any Congressional district, such member shall be appointed by the Executive Board to represent said district until such election.  Between meetings of the State Committee, the Executive Board shall possess all of the authorities of the State Committee, except for the authority to amend rules, nominate candidates, fill vacancies on the State Committee and elect officers.

## Appendix A

| | TOTAL | Asian / Pacific Islander | Black / African-American | Hispanic (of any race) | LGBTQ+ | Native Americans | Youth |
|---|---|---|---|---|---|---|---|
| **Percent in Democratic Electorate** (provided by DNC Data and Analytics Team) | | 1.0% | 60.0% | 2.0% | 7.0% | 0.0% | 34.0% |
| **Percent in Population** | | 1.7% | 27.4% | 4.4% | | 1.2% | 31.5% |
| **Greater Percent** | | 1.7% | 60.0% | 4.4% | 7.0% | 1.2% | 34.0% |
| **Regarding the SDEC Body** | | | | | | | |
| **Total in 210 – Estimate from Available Data** (District Elected + District Vacancies Filled Aug 2018) | | 1 | 122 | 2 | | | 19 |
| **Required to Meet Affirmative Action Goal** | | 4 | 126 | 9 | 15 | 3 | 71 |
| **At-Large Added 2018** | | | 35 | | | | 1 |
| **Current Total Membership** (estimates and may be counted in more than one category) | | 1 | 157 | 2 | | | 20 |
| **Regarding the SDEC Executive Board** | | | | | | | |
| **Estimate At-Large Members to Add 2019** (some may self-identify from current 210 SDEC) | 3 | | | 7 | 15 | 3 | 51 |

*Data Needed to Complete this Portion*

**Notes** –
Elected and 2018 Data are best known from available source / some categories are not mutually exclusive