**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **RANDY KELLEY, et al.** | ) | |
| | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| | ) | **Case No. 1:21-cv-00056-RAH-SMD** |
| **v.** | ) | |
| | ) | |
| **CHRISTOPHER ENGLAND, in his official capacity as Chair of the State Democratic Executive Committee of Alabama, et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |

---

**MOTION TO DISMISS COMPLAINT IN INTERVENTION**

---

COME NOW Defendants **Christopher England**, in his official capacity as Chair of the State Democratic Executive Committee of Alabama, the **State Democratic Executive Committee of Alabama** ("SDEC"), the **Democratic National Committee** ("DNC"), and **Jaime Harrison**, in his official capacity as Chairperson of the Democratic National Committee (collectively, the "Defendants") and file this Motion to Dismiss the Complaint in Intervention (doc. 47) filed by Plaintiff-Intervenors, Randy Kelley and Janet May (collectively, the "Plaintiff-Intervenors"). In further support thereof, Defendants state as follows:

## **Factual Background**[1]

1. This case was originally filed in 1989, challenging the bylaws of the Alabama Democratic Party at the time (doc. 47 at ¶ 1).

2. On July 3, 1991, this Court entered a consent decree ("the Consent Decree") resolving claims pleaded in the 1989 complaint (*Id.* at ¶ 11).

3. The Consent Decree provides:

> 1. Within thirty (30) days of the date of final approval of this decree, the Chair of the State Democratic Executive Committee of Alabama shall appoint a Democratic Reform Commission, on which [B]lack Democrats shall be fairly represented. Service on the Reform Commission need not be limited to SDEC members, but may include other loyal Democrats in the state. The Commission shall be composed of not less than seven (7) and not more than fifteen (15) members. Each congressional district shall have some representation on the Commission.
>
> 2. The Reform Commission shall undertake such work as the Chair of the SDEC may designate, which shall include, though need not be limited to, revising the methods utilized in Alabama for selecting members of the Democratic National Committee, the State Democratic Executive Committee (including its boards and subcommittees), and all

[1] "When considering a motion to dismiss, all facts set forth in the Plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F. 3d 1228, 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long Cty.*, 999 F. 2d 1508, 1510 (11th Cir. 1993)). Accordingly, the Defendants recount the factual background of this matter as pleaded in the Plaintiffs' Complaint in Intervention and reflected in the exhibits attached thereto or referenced therein. That said, Defendants strongly disagree with Plaintiffs' contention that the 2019 amendments violate the Consent Decree, the Voting Rights Act, or the Constitution, or in any way negatively impact Black representation or participation in the Alabama Democratic Party. To the contrary – and Plaintiffs do not dispute – the 2019 amendments resulted in the election of the state party's first Black Chairperson and the percentage of Black members on the executive committee has remained the same. It is only the percentage of white members that has decreased.

county Democratic executive committees. The commission's goal shall be to propose reforms, as necessary, to:

(1) Provide full and fair representation for all Democrats in Alabama, including in particular [B]lack Democrats.

(2) Increase participation in party affairs of Democrats at the grass roots level, with particular emphasis on revitalization of county executive committees.

(3) Reform and revitalize activities of Democratic committees at all levels better to recruit and support Democratic candidates for office.

3. The Reform Committee shall report to the State Democratic Executive Committee before January 1, 1993.

4. The State Democratic Executive Committee **shall consider the reforms proposed by the Reform Commission, and it shall adopt those reforms deemed desirable**, or, at its discretion, other reforms conforming to the goals set out in paragraph 2 above, in time for the reforms to be implemented not later than the 1994 Democratic primary election.

5. The SDEC agrees that for the terms beginning in or after 1992, at least two of the five members serving on the National Democratic Committee from Alabama shall be [B]lack.

6. The parties have resolved all issues concerning costs and attorneys' fees.

7. When the Chair of the SDEC notifies this Court that said Democratic Reform Commission has been appointed, this action shall be dismissed; Provided, however, that the terms of this decree shall be permanent and binding on the parties, and dismissal shall be without prejudice to the rights of Plaintiffs and/or other members of the Plaintiff class to institute a civil action to seek enforcement of the terms of this decree or to assert claims that future practices of the Defendants, and each of them, violate the Constitution and laws of the United States or the State of Alabama.

> 8. Plaintiffs' outstanding claims regarding the methods of selection members of Democratic committees, boards and subcommittees at the national, state and county levels shall be considered resolved by the implementation of the terms of this decree.

(*Id.* at Exhibit 1 (emphasis added)).

4. The Consent Decree has not been modified or amended since it was entered on July 3, 1991.

5. At some point, the SDEC adopted a set of amended bylaws referred to as the "Figures Amendment" (doc. 47 at Exhibit 2).[2]

6. The Plaintiff-Intervenors do not allege that the Figures Amendment was adopted as a result of the report of the Reform Commission required by paragraph 3 of the Consent Decree, nor does the text of the Figures Amendment make any reference to the Reform Commission's report, the Consent Decree, or this case (*Id.* at Exhibit 2).

7. The Figures Amendment attached to the Complaint in Intervention is undated, but makes repeated reference to "the [SDEC] organizational meeting to be held in 1990 . . ." (*Id.* at Exhibit 2, ¶¶ 2, 5, 7).

---

[2] Defendants do not concede that the unauthenticated exhibit attached to the Complaint in Intervention is an accurate statement of the Figures Amendment, but assume so for purposes of this motion.

8. Following its adoption, the Figures Amendment was the subject of "minor amendments," which did not require any modification of the Consent Decree (*Id.* at ¶ 23).

9. On October 5, 2019, the SDEC held a meeting and adopted a set of amended bylaws ("the Bylaws") (*Id.* at ¶ 31).[3]

10. On August 13, 2021, the Plaintiff-Intervenors filed their Complaint in Intervention pleading claims that the Bylaws violate the Consent Decree (Count I), that the Bylaws violate Section 2 of the Voting Rights Act of 1965, 52 U.S.C. § 10301 (Count II), and that the Bylaws were adopted with a discriminatory purpose in violation of Section 2 of the Voting Rights Act of 1965, 52 U.S.C. § 10301, and the Fourteenth and Fifteenth Amendments to the United States Constitution (*Id.*).[4]

## **Standard of Review**

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl.*

---

[3] The 2019 amended Bylaws were submitted to this Court without objection (doc. 39 at Exhibit A).

[4] The Complaint in Intervention does not specify which claims are pleaded against which Defendants.

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient. *Id.* at 678 (internal citations and quotation marks omitted). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citing *Twombly*, 550 U.S. at 557).

Federal Rule of Civil Procedure 12(b)(6) permits dismissal when a complaint fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 678 (internal citations and quotation marks omitted). A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The complaint must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").

## **Argument**

The three counts pleaded in Plaintiff-Intervenors' Complaint in Intervention are each due to be dismissed for failure to state a claim upon which relief can be granted. With respect to Count I, the Plaintiff-Intervenors have failed to plead that any of the Defendants violated any provision of the Consent Decree. With respect to

Counts II and III, the Plaintiff-Intervenors have failed to plead any state action forming the basis for said claims, as is required to prevail on claims brought under Section 2 of the Voting Rights Act and the Fourteenth and Fifteenth Amendments.

**A. Plaintiff-Intervenors Have Failed to Plead that Any Defendant Violated the Consent Decree.**

The 1991 Consent Decree settling this litigation did not mandate any specific changes to the governance structure of the SDEC (doc. 47 at Exhibit 1).[5] Instead, as stated above, it required only that the Chair of the SDEC appoint a Democratic Reform Commission to propose reforms and that the SDEC consider these proposed reforms and adopt those it "deemed desirable." *Id.*[6]

Contrary to the implication in the Complaint in Intervention, neither the Consent Decree nor the resulting Reform Commission Report required the adoption of any specific changes to the SDEC's bylaws and certainly did not require the

[5] *See Firefighters Local Union No. 1784 v. Stotts*, 467 U.S. 561, 574 (1984) ("[T]he 'scope of a consent decree must be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it' or by what 'might have been written had the plaintiff established his factual claims and legal theories in litigation'") (quoting *United States v. Armour & Co.*, 402 U.S. 673, 681-82 (1971)).

[6] The Complaint in Intervention alleges that the Consent Decree required the SDEC to "consider **and adopt** reforms proposed by the commission[.]" (doc. 47 at ¶ 15 (emphasis added)). However, this misrepresents the Consent Decree, which requires only that the SDEC "consider the reforms proposed by the Reform Commission, and . . . adopt those reforms deemed desirable[.]" (*Id.* at Exhibit 1 ¶). This Court is not required to accept as true allegations which are contradicted by documents attached to the Complaint. *See Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009) ("It is the law in this Circuit that 'when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern.'") (quoting *Griffin Industries, Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007)).

SDEC to adopt the Figures Amendment.[7] The Complaint in Intervention fails to identify the specific provision of the Consent Decree that the Bylaws supposedly violate. Instead, the Complaint alludes to the Consent Decree's "stated goals" of "providing 'full and fair representation for all Democrats in Alabama, including in particular black Democrats.'" (doc. 47 at ¶ 14). But the way in which that goal was to be enforced is itself set forth in the plain language of the Consent Decree: by convening the Reform Commission and adopting those reforms deemed desirable. And Plaintiff-Intervenors have failed to allege that the obligations as set forth by the Consent Decree's plain terms have been violated.[8]

Consent decrees are interpreted and enforced according to their unambiguous terms. "[L]ong standing precedent evinces a strong public policy against judicial rewriting of consent decrees. '[A] district court may not impose obligations on a party that are not unambiguously mandated by the decree itself.'" *Reynolds v. Roberts*, 207 F.3d 1288, 1300 (11th Cir. 2000) (quoting *King v. Allied Vision*,

---

[7] The undated document attached to the Complaint in Intervention as the Figures Amendment repeatedly states that it will take effect at the **1990** SDEC organizational meeting (doc. 47 at Exhibit 2, ¶¶ 2, 5, 7). The Consent Decree was not entered until **1991** (*Id.* at Exhibit 1).

[8] Of course, Defendants maintain that the Alabama Democratic Party has, since the resolution of the original *Hawthorne* suit, consistently and vigorously provided full and fair representation for Black Democrats in party leadership. Further, Defendants contend that the 2019 Bylaws went much further in ensuring full and fair representation for "**all** Democrats in Alabama" by providing representation for previously omitted groups including young Democrats, members of the LGBTQ+ community, Hispanics, Asian and Pacific Islanders, and others.

*Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995)) (some alterations in original). As the Supreme Court has held:

> Consent decrees are entered into by parties to a case after careful negotiation has produced agreement on their precise terms. The parties waive their right to litigate the issues involved in the case and thus save themselves the time, expense, and inevitable risk of litigation. Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with the litigation. Thus the decree itself cannot be said to have a purpose; rather the parties have purposes, generally opposed to each other, and the resultant decree embodies as much of those opposing purposes as the respective parties have the bargaining power and skill to achieve. **For these reasons, the scope of a consent decree must be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it.**

*United States v. Armour & Co.*, 402 U.S. 673, 681–82 (1971) (emphasis added); *see also United States v. ITT Continental Baking Co.*, 420 U.S. 223, 233 (1975) ("[A]ny command of a consent decree or order must be found within its four corners, and not by reference to any purposes of the parties or of the underlying statutes").[9]

Further, consent decrees are interpreted and construed according to the rules for construing contracts. *See Peery v. City of Miami*, 977 F.3d 1061, 1069 (11th Cir.

[9] *See also United States v. Atlantic Refining Co.*, 360 U.S. 19, 23 (1959) (rejecting a loose interpretation of the consent decree even though such an interpretation might better effectuate the purposes of the acts allegedly violated); *Hughes v. United States*, 342 U.S. 353, 356-57 (1952) (rejecting an invitation to advance the asserted purpose of the consent decree through an interpretation of a consent decree not justified by the four corners of the decree); *Sierra Club v. Meiburg*, 296 F.3d 1021, 1031-32 (11th Cir. 2002) ("The Supreme Court has observed that consent decrees generally do not have overarching purposes which can be used as guides to interpretation.").

2020) ("Because a consent decree is a contract, we follow the rules for interpretation of contracts and apply principles of state contract law"); *F.T.C. v. Leshin*, 618 F.3d 1221, 1231 (11th Cir. 2010). To sufficiently plead a breach of contract, a plaintiff must identify with specificity which provisions of the contract were purportedly breached. *See Est. of Bass v. Regions Bank, Inc.*, 947 F.3d 1352, 1358-59 (11th Cir. 2020) ("The District Court noted that [plaintiff] only 'generally asserted' a breach of contract, without identifying 'any provisions or any specific agreements that were breached . . .' We agree that this was insufficient to state a claim because [plaintiff] has not alleged any general or specific provision of any contract that [defendant] might have breached"). Because Plaintiff-Intervenors have failed to plead any specific violation of the Consent Decree, Count I is due to be dismissed.[10]

---

[10] Moreover, the Complaint in Intervention is grounded on a misunderstanding (or misrepresentation) of the Bylaws. The Complaint alleges that the Bylaws "provide that at-large members [of the SDEC] are no longer selected by the minority caucus. Instead they are selected by the 210 elected members of the State Democratic Executive Committee from among members nominated by the applicable diversity caucus" (doc. 47 at ¶ 39). This is the central premise on which the Complaint in Intervention is based and it is demonstrably untrue. The Bylaws do not take away the right to select at-large members from the minority caucus. To the contrary, the Bylaws provide that "[e]ach Diversity Caucus shall have the exclusive right to nominate candidates and/or a slate of candidates for the At-Large positions on the State Committee . . ." and that "[a] nominee or slate of nominees of each Diversity Caucus **shall be elected** to the SDEC . . . unless a motion to reject an individual nominee and/or slate of nominees is adopted by two-thirds (2/3) of the SDEC members voting." (doc. 39 at Exhibit A, Art. 3(2)(l) (emphasis added). In other words, the minority caucus retains its right to select at-large members of the SDEC, subject only to a two-thirds override of the full SDEC.

### B. Plaintiffs Have Failed to Plead That Any Act by Defendants Constitutes State Action.

To maintain claims under Section 2 of the Voting Rights Act and the Fourteenth and Fifteenth Amendments, Plaintiff-Intervenors must allege some sort of state action. *See* 52 U.S.C. § 10301(a); *Cook v. Talladega Coll.*, 908 F. Supp. 2d 1214 (N.D. Ala. 2012). Section 2 specifically states as follows:

> No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied **by any State or political subdivision** in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color, or in contravention of the guarantees set forth in section 10303(f)(2) of this title, as provided in subsection (b).

52 U.S.C. § 10301(a) (emphasis added). As to the Constitutional Amendments, the law is clear that the amendments "do not apply to private parties unless those parties are engaged in an activity deemed to be state action." *Cook*, 908 F. Supp. 2d at 1222 (quoting *Farese v. Scherer*, 342 F.3d 1223, 1233 n.13 (11th Cir. 2003)) (internal quotation marks omitted).

It is well established that "the normal role of party leaders in conducting internal affairs of their party, other than primary or general elections, does not make their party offices governmental offices or the filling of these offices state action." *Smith v. State Exec. Comm. Of Democratic Party of Georgia*, 288 F. Supp. 371, 376 (N.D. Ga. 1968). The Bylaws are the product of intra-party business and cannot be considered state action. *See Max v. Republican Committee of Lancaster County*, 587

F. 3d 198 (3rd Cir. 2009) (declining to elevate internal political party issues to constitutional level); *Smith*, 288 F. Supp. at 374 (holding head of state party's actions did not constitute state action); *Valenti v. Pennsylvania Democratic State Committee*, 844 F. Supp. 1015, 1018 (M.D. Pa. 1994) (holding that "the conduct of party leaders involving the internal affairs of the party is not state action"); *Blank v. Heineman*, 771 F. Supp. 1013, 1018 (D. Neb. 1991) (holding plaintiffs' argument that "actions relating solely to internal activity of a political party" constitutes state action is unpersuasive). "Simply stated, the plaintiffs' argument, carried to its logical extension would transform *any* action of a political party involving internal affairs into state action." *Blank*, 771 F. Supp. at 1018. Thus, Plaintiffs cannot state a claim for relief under Section 2 and the Fourteenth and Fifteenth Amendments as there is no state action alleged in the Complaint in Intervention.

The Defendants anticipate that the Plaintiffs will repeat their previous argument that the law of the case doctrine requires this Court to find that the Defendants' actions constitute state action. *See Hawthorne v. Baker*, 750 F. Supp. 1090, 1092 (M.D. Ala. 1990), *vacated sub nom. State Democratic Exec. Comm. of Alabama v. Hawthorne*, 499 U.S. 933 (1991). However, "[t]he law of the case does *not* apply to a finding that is later vacated. Where a judgment is vacated for a new determination, findings previously made that are integral to that judgment are likewise vacated and are thus not subject to the law of the case doctrine." *Dorsey v.*

*Cont'l Cas. Co.*, 730 F.2d 675, 678 (11th Cir. 1984) (citing *Johnson v. Board of Education of the City of Chicago*, 457 U.S. 52 (1982)) (emphasis in original). The judgment on which the Plaintiffs rely was vacated and remanded with directions to dismiss by the Supreme Court. *Hawthorne*, 499 U.S. 933. Accordingly, the law of the case doctrine has no bearing on the Defendants' Motion to Dismiss.

## **Conclusion**

None of the three counts in the Complaint in Intervention state a claim upon which relief can be granted. The Plaintiff-Intervenors' contention in Count I that the Defendants have violated the Consent Decree is belied by the Plaintiff-Intervenors' failure to identify any of the Consent Decree's eight paragraphs that any of the Defendants have allegedly violated. As to Counts II and III, Section 2 of the Voting Rights Act and the Fourteenth and Fifteenth Amendments apply only to state action. The Plaintiff-Intervenors have not pleaded that any of the Defendants' conduct alleged in the Complaint in Intervention constitutes or can be considered state action. Accordingly, all three of the claims pleaded in Plaintiff-Intervenors' Complaint in Intervention are due to be dismissed.

Respectfully submitted,

*/s/ Barry A. Ragsdale*
Barry A. Ragsdale
Robert S. Vance III

**Counsel for Christopher England, as Chair of the State Democratic Executive Committee of Alabama and the State Democratic Executive Committee of Alabama**

**OF COUNSEL:**
**DOMINICK FELD HYDE, P.C.**
1130 22nd Street South, Suite 4000
Birmingham, Alabama 35205
Tel.: (205) 536-8888
bragsdale@dfhlaw.com
rvance@dfhlaw.com

*/s/ Anil A. Mujumdar*
Anil A. Mujumdar

**OF COUNSEL:**
**DAGNEY JOHNSON LAW GROUP**
2170 Highland Avenue, Suite 250
Birmingham, Alabama 35206
Tel.: (205) 635-4462
anil@dagneylaw.com

*/s/ Elisabeth C. Frost*
Elisabeth C. Frost

**OF COUNSEL:**
**ELIAS LAW GROUP LLP**
10 G Street NE, Suite 600
Washington, DC 20002
Tel: (202) 968-4513
efrost@elias.law

*/s/ Sarah R. Gonski*
Sarah R. Gonski

**OF COUNSEL:**
Sarah R. Gonski
**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012-2788
Telephone: (602) 351-8000
Facsimile: (602) 648-7000
SGonski@perkinscoie.com

**Counsel for the Democratic National Committee and Jaime Harrison, as Chair of the Democratic National Committee**

**CERTIFICATE OF SERVICE**

I hereby certify that on September 10, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will give notice of such filing to the following:

Fred F. Bell, Sr.
Fred Bell, Attorney at Law
1015 South McDonough Street
Montgomery, Alabama 36104
ffbell@netzero.com

Bryan L. Sells
The Law Office of Bryan L. Sells LLC
P.O. Box 5493
Atlanta, Georgia 31107
bryan@bryansellslaw.com

Mark W. Sabel, Jr.
Sabel Law Firm, L.L.C.
P.O. Box 231348
Montgomery, Alabama 36123
mksabel@mindspring.com

*/s/ Barry A. Ragsdale*
OF COUNSEL